Argued and submitted August 6, reversed and remanded October 27, 2010

John E. HILL,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Klamath County School District,
*Respondents.*

Employment Appeals Board
09AB1806; A142839

243 P3d 78

Larry L. Linder argued the cause for petitioner. With him on the brief was Law Office of Larry L. Linder, LLC.

Denise G. Fjordbeck, Attorney-in-Charge, Civil/Administrative Appeals, waived appearance for respondent Employment Department.

No appearance for respondent Klamath County School District.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

DUNCAN, J.

## DUNCAN, J.

Claimant seeks judicial review of a final order of the Employment Appeals Board denying him unemployment benefits on the ground that he voluntarily left work without good cause. On appeal, claimant argues, *inter alia*, that the board's holding that he lacked good cause is not supported by substantial evidence. We agree and, therefore, reverse and remand.

The evidence before the board was as follows. Claimant began working for the Klamath County School District (employer) in November 1996. He was employed as a computer specialist and network supervisor. He was married and had a father-in-law, Oppelt.

In 2007, after claimant had worked for employer for 11 years, he began to use his accrued sick leave to care for Oppelt, who was 96 years old and had multiple medical problems that limited his ability to care for himself. Oppelt was blind in one eye and had progressive deafness and dementia. He suffered from congestive heart failure, chronic obstructive pulmonary disease, and severe peripheral vascular disease, conditions that made breathing and walking difficult. Oppelt could not afford to hire a caregiver, nor could claimant and his wife.

Employer's payroll manager had told claimant that he could use his sick leave to care for Oppelt. Claimant and his wife lived in Klamath Falls and Oppelt lived in Brookings. In late 2007, claimant frequently traveled to Brookings to take Oppelt to doctor's appointments and to help him with day-to-day matters. Claimant testified that there were no family members or friends in the Brookings area who could care for Oppelt and that, when claimant was not with Oppelt, no one was.

According to claimant, employer interfered with his use of sick leave. Claimant testified that, when he was in Brookings, employer would call him and he would have to sit outside Oppelt's house to get Internet access to work on employer's computer network. He testified, "It was actually like I wasn't even using the sick time, I was just working long distance."

Claimant attempted to move Oppelt to Klamath Falls, but was unsuccessful. After two days in Klamath Falls, Oppelt "got to the point where he could not breathe and he had blue lips." Oppelt's doctor determined that Oppelt suffered hypoxia at higher elevations and recommended that claimant move Oppelt back to sea level in Brookings. Claimant did. Claimant attempted to find work in Brookings so he could be near Oppelt, but was unable to do so because of the economic recession.

According to claimant, employer became upset with claimant's use of sick leave. In December 2007, claimant's supervisor came into claimant's office with a resignation letter and "threw it on [claimant's] desk" and "told [claimant] to sign it." Claimant asked the supervisor when he wanted claimant to resign, and the supervisor took the letter and left. Three or four hours later, the supervisor returned with the letter dated March 14, 2008. Claimant signed the letter.

Claimant testified that, after he signed the resignation letter, he tried to continue to use sick leave to care for Oppelt, but the amount of work employer gave him prevented him from doing so. He testified, "[T]here was always some larger, huge project that they wanted done, four weeks' worth of work done in one week, and the pressure had gotten to the point to where I—nobody could have handled it."

Claimant stopped working for employer on March 14, 2008. At that point, he had 539 hours of accrued sick leave. After claimant stopped working as an employee and lost his sick leave, employer hired claimant to do some work on a contract basis.

Claimant later applied for unemployment benefits. An employee is disqualified from receiving unemployment benefits if the employee has been "discharged for misconduct connected with work" or has "[v]oluntarily left work without good cause." ORS 657.176(2)(a), (c).[1] The Employment

---

[1] OAR 471-030-0038(2) provides:

"The distinction between voluntary leaving and discharge is:

"(a) If the employee could have continued to work for the same employer for an additional period of time the separation is a voluntary leaving of work;

"(b) If the employee is willing to continue to work for the same employer for an additional period of time but is not allowed to do so by the employer the separation is a discharge."

Department denied claimant's request for benefits on the ground that claimant had voluntarily left work without good cause.

Claimant sought review of the department's denial by requesting a hearing before an administrative law judge (ALJ). At the hearing, claimant was the only witness. Employer's representative was present, but declined to question claimant.

Claimant testified that he did not leave work voluntarily. He explained that, when his supervisor threw the resignation letter at him, "[i]t was pretty much my assumption that I pretty much was gone, whether I signed the resignation [letter] or not." The ALJ asked claimant what he thought would have happened had he not signed the letter, and claimant answered:

"I'm sure that they would have made life very hard for me.

"* * * * *

"One of the favorite things that they would say, Judge, is 'we own you, you're salaried so you're here until the duration of the job is done.' And I was already putting in 60-hour weeks at the time and I just kind of thought, well, they're just going to pile it on until it's over, until I can't do it anymore. I'm 54. I'm sure they would have made my life miserable, sir."

The ALJ held that claimant did not leave work voluntarily, he was discharged. The ALJ further held that claimant was discharged for using his sick leave, which was not misconduct. Based on those holdings, the ALJ concluded that defendant was entitled to unemployment benefits.

Employer appealed to the board. The board reversed, concluding that claimant voluntarily left work

---

ORS 657.176(7) provides that, if an employer informs an employee that the employee will be discharged on a specific date and the discharge would be for reasons that would not constitute misconduct, the employee may voluntarily leave work within 15 days of the discharge date without being disqualified from receiving benefits for doing so. Under such circumstances, "the separation from work shall be adjudicated as if the voluntary leaving had not occurred and the discharge had occurred."

without good cause. Regarding the nature of claimant's departure, the board found that claimant could have continued to work for employer and that his resignation was the product of a "mutual agreement":

> "When asked by the ALJ what he thought would happen if he did not resign, claimant did not respond that he would have been discharged. Instead, he said that he was 'sure they would have made life very hard' for him by asking him to work long hours. * * * In fact, after his separation from employment, the employer continued to pay him as a contractor, suggesting that it still had need for his services. When the employer asked claimant to sign the resignation and claimant did so, the two parties, in effect, reached an agreement that claimant's employment would end on March 14, 2008. Such a mutual agreement is a voluntary leaving. * * * Claimant quit work."

Regarding the reasons for claimant's departure, the board found that claimant quit without good cause. "Good cause" is defined by OAR 471-030-0038(4), which provides, in part:

> "Good cause for voluntarily leaving work under ORS 657.176(2)(c) is such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work. * * * Except as provided in OAR 471-030-0038(5)(g), for all individuals, the reason must be of such gravity that the individual has no reasonable alternative but to leave work."

In turn, OAR 471-030-0038(5)(g) provides that "[l]eaving work with good cause includes, but is not limited to, leaving work due to compelling family reasons." OAR 471-030-0038(1)(e)(B) provides that, "compelling family reasons" exist when "[t]he illness or disability of a member of the individual's immediate family necessitates care by another and the individual's employer does not accommodate the employee's request for time off." And, OAR 471-030-0038(1)(f) provides that, " 'a member of the individual's immediate family' includes spouses, domestic partners, parents, and minor children under the age of 18, including a foster child, stepchild or adopted child." Thus, a person has good cause for voluntarily leaving work if the person has no

reasonable alternative but to leave work or leaves for compelling family reasons.

■ Here, the board found that claimant had two reasonable alternatives to leaving work: (1) claimant's wife could have cared for Oppelt and claimant could have used his sick leave to assist her when necessary, and (2) claimant could have found work in Brookings:

> "Claimant failed to show that he faced a situation of such gravity that he had no reasonable alternative but to quit when he did. He had a home in Klamath Falls and had a substantial amount of sick leave. He had the reasonable alternative to allow his wife to go to Brookings to care for her father while he continued his employment in Klamath Falls and used sick leave as necessary to assist her. At a minimum, he could have done so for a period of time while he attempted to secure employment in the Brookings area rather than turning in his resignation and becoming unemployed."

The board did not address whether claimant left work for compelling family reasons. This judicial review followed.

On review, claimant makes two assignments of error. First, claimant argues that the board erred by holding that he voluntarily left work. Second, claimant argues that, even if he voluntarily left work, the board erred in holding that he did so without good cause.

We review the board's order to determine if it is supported by "substantial evidence." ORS 657.282; ORS 183.482(8)(c). A finding of fact is supported by substantial evidence if "the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c).

We conclude that, even assuming claimant voluntarily left work, the board erred in holding that claimant lacked good cause. As set out above, good cause to leave work exists when "a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work." OAR 471-030-0038(4). The reason for leaving work "must be of such gravity that the individual has no reasonable alternative but to leave work." *Id.* It also exists if an employee

leaves for "compelling family reasons." OAR 471-030-0038(1)(e)(B). As described, the board held that claimant had reasonable alternatives to leaving work. That holding is erroneous because it is based on factual findings that are not supported by substantial evidence.

The board found that claimant's wife could care for Oppelt and that claimant could use his sick leave to assist her. The record does not support those findings. There was no evidence that claimant's wife was able or available to care for Oppelt. The evidence was that claimant was Oppelt's caregiver. In fact, claimant's uncontradicted testimony was that when he was not with Oppelt, no one was. Likewise, there was no evidence that claimant could have used his sick leave to care for Oppelt. To the contrary, the evidence was that employer had interfered with claimant's use of sick leave, first by calling him while he was in Brookings and then by giving him an amount of work that he could not complete as required if he used his sick leave.

The board's finding that claimant could have found work in Brookings is not supported by substantial evidence either. The only evidence regarding that alternative was claimant's testimony that he had tried to find work in Brookings, but had been unable to because of the recession. Employer did not rebut, or even question, claimant's testimony.

Because the board's holding that claimant had reasonable alternatives to leaving work is not supported by substantial evidence, the board erred in denying claimant benefits.[2]

Reversed and remanded.

---

[2] Because we conclude that the board erred in holding that claimant had reasonable alternatives to leaving work, we do not address claimant's alternative argument that he had good cause for leaving work because he left for compelling family reasons.